UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY M. ALLBRITTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO. 2:11cv116 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3). Section 205(g) of the Act provides, <u>inter alia</u>, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law

Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: musculoskeletal impairments involving the neck, shoulder, back, and left knee, with residuals of pain, and an affective disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that based on the combination of the claimant's mental and physical impairments, he has the residual functional capacity to perform simple unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b). Based on the claimant's mental capacity he is limited to no more than simple unskilled work and with no more than superficial contact with supervisors, co-employers, and the general public. Based on the claimant's physical impairments, he is restricted from work tasks involving more than occasional overhead work bilaterally.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 15, 1962 and was 41 years old, on the alleged disability onset date, which is defined as a younger individual age 18-49, (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969,

and 416.969(a)).

(Tr. 37-44).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on August 22, 2011. On November 28, 2011, the defendant filed a memorandum in support of the Commissioner's decision, and on December 12, 2011, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed DIB and SSI applications on February 9, 2007, alleging disability beginning

January 1, 2004. Plaintiff's DIB and SSI applications were denied initially and upon reconsideration. Plaintiff subsequently requested a hearing before an ALJ. Plaintiff appeared, via video teleconference, with counsel and testified at a hearing held by ALJ Paul R. Armstrong on July 24, 2009. On September 16, 2009, the ALJ determined that Plaintiff was not disabled, as defined by the Act, and thus was not entitled to DIB or SSI benefits (Tr. 32-49). The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on December 8, 2010. After an extension was granted by the Appeals Council, Plaintiff timely filed this action on April 5, 2011.

Plaintiff was 47 years old when the ALJ issued his decision (Tr. 45, 186). He had a high school equivalency diploma (GED) (Tr. 223) and had worked as a self-employed subcontractor in the siding business (Tr. 220). The evidence of record indicates that Plaintiff had musculoskeletal impairments involving his neck, shoulders, back, and left knee, as well as depression.

Plaintiff testified that he had experienced back problems since 1994, at which time he was also seeing a psychiatrist for treatment of alcoholism, but he said that he had not seen a mental health professional for a long time (Tr. 73). He also had pain in both shoulders (Tr. 73). He said that he had lower back pain constantly and that it was accompanied by numbness in his left leg, his arms, and his neck (Tr. 81). He had neck pain that radiated to his arms and pain in his shoulders (Tr. 81-82) and caused headaches (Tr. 90). His shoulders hurt, causing pain when he reached over his head (Tr. 82). His left knee also hurt (Tr. 82). He also angered easily and preferred not to be around people most of the time (Tr. 86). He said he was depressed and sometimes wanted "to end it" (Tr. 86). He had difficulty with concentration "all the time" (Tr.

5

87). His depression had worsened over the past year (Tr. 87). Asked if he finished something, such as washing dishes, after he started it, he said that he always finished (Tr. 88). He handled criticism "pretty good" (Tr. 88).

Plaintiff testified that he had "walked probably about 15 minutes down the road to try to . . . break the pain" (Tr. 82), after which he had to sit down for 15 or 20 minutes (Tr. 85). If he sat for a long period, he felt tingling and numbness in his legs (Tr. 82), as well as pain in his back (Tr. 83). He tried to walk as much he could because walking relieved his back pain (Tr. 89). Pain in his left leg was aggravated by too much walking (Tr. 84).

When asked what kind of work he thought he could do, Plaintiff responded that he could probably do some painting or "some kind of light maintenance work" (Tr. 75). He said that he could not lift more than 20 or 30 pounds (Tr. 76). The ALJ asked Plaintiff whether he could do a job that involved lifting no more than 20 pounds, doing light maintenance for 40 hours a week (Tr. 76). He said that he could not perform such a job because his back locked up every morning for half an hour until he walked or stretched for about half an hour (Tr. 76). The ALJ asked why he could not just get up half an hour early, loosen up his back, and then go to work (Tr. 76). Plaintiff responded that he had tried to work for other people but that they had fired him when they found out that he had back surgery (Tr. 76). The ALJ explained to Plaintiff that, to be entitled to disability benefits, he had to be unable to work, whether or not someone would hire him, and the ALJ asked whether he could work at a job that involved lifting no more than 20 pounds, but he would be on his feet "the whole time" (Tr. 78). Plaintiff said that he could not perform such a job because his back would lock up and his neck would be pinched (Tr. 78). The ALJ then asked him whether he could perform a job that involved sitting down, with an option to

6

sit or stand; the job would involve giving information to people in a mall, directing them to different businesses and possibly filling out simple forms and watching monitors (Tr. 78-79). The job would not require any lifting (Tr. 79). Plaintiff responded that he could not perform such a job because he did not think he had the education (Tr. 79). He said that he would be unable to do such a job but "would do it anyway . . . for my children" (Tr. 79). He said that he felt that he was "being put in a spot" (Tr. 80).

Plaintiff's attorney asked Plaintiff to consider a job that allowed him to "stand up every once in awhile, then sit back down and continue to do the job. If you attempted to do that, do you feel you'd be able to continue to do that eight hours a day, five days a week, or do you feel you would not?" (Tr. 80). Plaintiff responded, "The answer is no because I've never had that chance to do that . . . because people fire me" (Tr. 80-81). He added that he no longer had children to care for, that it was time to take care of himself, and that he was "not going to work" (Tr. 81).

Before the vocational expert testified regarding jobs available in the regional economy, which included the Chicago and Joliet statistical division, as well as the Gary metropolitan area, the ALJ asked him to indicate whether any of his testimony was inconsistent with information contained in the Dictionary of Occupational Titles (DOT) or Selected Characteristics of Occupations, and the expert testified that he would do so (Tr. 91). The ALJ asked the vocational expert to consider a hypothetical individual who could perform simple, unskilled light work that involved no more than superficial contact with supervisors, co-employees, and the general public and only occasional overhead tasks (Tr. 92). The vocational expert testified that such an individual would not be able to return to any of Plaintiff's past relevant work but could perform

light jobs in assembly, packing, sorting, and inspecting; these jobs were represented by at least 5,000 positions each in the regional economy (Tr. 93). If the individual had the same limitations but was further limited to performing sedentary work with a sit/stand option, the individual would be able to perform the same occupations, but the number of positions in the region would be reduced to 3,000 to 4,000 (Tr. 93). If the individual could not perform high-stress occupations that had strict production quotas, such as assembly line jobs, he could still perform work as an office cleaner or housekeeping cleaner, of which there were at least 5,000 to 7,000 positions in the regional economy, but those jobs would not accommodate a sit/stand option (Tr. 95).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset date of his alleged disability, and that he had severe impairments, but that he did not have an impairment or combination of impairments that met or medically equaled any of those included in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 37-40). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform simple, unskilled work at the light exertional level that did not require more than occasional overhead work and did not require more than superficial contact with others (Tr. 40). In addition, he could have no more than superficial contact with supervisors, coworkers, and the general public (Tr. 40). The ALJ found that, given this RFC, Plaintiff could no longer perform his past work as a self-employed contractor but that he could perform other jobs that existed in significant numbers in the national economy and was therefore not disabled (Tr. 43-45). *See* 20 C.F.R. § 404.1520(a)(4)(v).

In support of a remand, the Plaintiff first argues that the ALJ failed to assess a combination of his impairments when making his RFC determination. Specifically, the Plaintiff

claims that the ALJ failed to consider his obesity as a disabling condition. However the record is clear that the ALJ considered multiple opinions in determining Plaintiff's RFC. The Seventh Circuit has considered and rejected arguments similar to the one raised by Plaintiff. In *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008), the appellant argued that "the ALJ failed to give sufficient weight to the combined impact of [appellant's] health problems." The court disagreed, noting that the ALJ showed that he considered the impairments in combination by finding that Getch's impairments, considered in combination, did not equal a listing. *Id*. Here, as in *Getch*, the ALJ stated explicitly that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals" a listing (Tr. 38). The only particular condition that Plaintiff claims the ALJ did not accommodate was his obesity (Pl.'s Br. at 14-15), yet he does not attempt to show that any of his physicians believed that obesity caused additional limitations.

The ALJ explained that, regarding Plaintiff's mental impairments, he rejected the opinion of the state agency reviewing doctor who found that there was no evidence of a severe mental impairment (Tr. 42; *see* Tr. 293-306). Even though Plaintiff admitted that he had not undergone mental health treatment for a long time (Tr. 73), the ALJ concluded that the record showed that Plaintiff had a severe mental impairment that significantly limited his ability to work, and the ALJ accommodated his mental limitations in his RFC finding (Tr. 40, 42). The ALJ considered the Dr. Popli, a psychiatrist, who completed a checkbox form in June 2009, indicating that Plaintiff had moderate to severe mental impairments (Tr. 510-12). However, The ALJ rejected Dr. Popli's opinion that Plaintiff was disabled and precluded from performing work activity on a sustained and continuous basis, as inconsistent with the record as a whole (Tr. 43).

Plaintiff next argues that the ALJ ignored important evidence in the record. Specifically,

9

Plaintiff argues that the Commissioner's decision should be remanded because the ALJ did not discuss the opinion of Dr. Ames that he was only "intermittently" employable and that his "work attendance would be unreliable" (Pl.'s Br. at 16; *see* Tr. 507). However, Dr. Ames made it clear that the basis of his opinion was Plaintiff's "reported pain and depression" (Tr. 507), a legally insufficient basis for finding a claimant disabled. Under the regulations, the agency will consider a claimant's statements about his symptoms, but those statements cannot alone establish that the claimant is disabled; there must be medical signs and laboratory findings that show that the claimant has impairments that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 404.1529(b). An ALJ is not required to adopt a doctor's statement that is based entirely on a claimant's allegations. *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989) (upholding ALJ's determination that a physician's observations were "mere recitations of [the claimant's] complaints, not objective observations required by the Listings"); *Young v. Secretary of Health & Human Services*, 925 F.2d 146, 151 (6th Cir. 1990) (a physician may not base a medical opinion on a claimant's subjective complaints.). Furthermore, Dr. Ames' opinion that Plaintiff was disabled was outside the doctor's area of expertise. The ultimate determination of disability is a legal matter that is reserved to the Commissioner, and "[a] statement by a medical source that [a claimant] is 'disabled' or 'unable to work' does not mean that [the Agency] will determine that [the claimant is] disabled." 20 C.F.R. § 404.1527(e).

Plaintiff next contends that the ALJ did not evaluate the credibility of his allegations. In assessing a claimant's credibility, an ALJ considers a number of factors, including, *inter alia*, daily activities; the location, duration, frequency, and intensity of symptoms; precipitating and aggravating factors; medications taken; and treatment. 20 C.F.R. § 404.1529(c)(3). Social

Security Ruling 96-7p, 1996 WL 374186. Moreover, the determination of credibility is normally considered a factual matter, *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 402 (1990); an ALJ's credibility finding is entitled to "considerable deference" and will be overturned only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)); *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1995) (because "the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong.").

The ALJ noted evidence of repeated normal physical examinations (Tr. 41-43), an absence of psychiatric treatment for ten years (Tr. 41), and the fact that Plaintiff used over-the-counter medications to treat his headaches (Tr. 41), as well as evidence that he benefitted from his prescribed medications (Tr. 42). The ALJ's credibility assessment was thus not "patently wrong," and will be upheld by this Court.

Plaintiff also argues that the ALJ failed to properly determine and include Plaintiff's mental limitations into the RFC. Regarding his mental limitations, Plaintiff argues that the ALJ failed to accommodate his difficulties with social functioning (Pl.'s Br. at 20-21), but he does not explain why this impairment was not accommodated by the ALJ's limitation to no more than superficial contact with other people (Tr. 40), a limitation that was consistent with Plaintiff's own testimony that he angered easily and therefore preferred not to be around other people most of the time (Tr. 86). Plaintiff further contends that the ALJ failed to accommodate his moderate limitations in concentration, persistence, or pace by limiting him to only simple, unskilled work (Pl.'s Br. at 21-23). However, although Plaintiff stated that he had problems with concentration,

11

he admitted that he finished tasks that he began (Tr. 88). In support of his argument, Plaintiff cites *O'Connor- Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010). In that case, however, the most restrictive hypothetical question posed by the ALJ did not include "a limitation on concentration, persistence or pace, although later in his written decision the ALJ listed this limitation in assessing Ms. O'Connor-Spinner's residual functional capacity." *O'Connor-Spinner*, 627 F.3d at 617-18. It is true that a valid hypothetical question must ordinarily include limitations that an ALJ finds for a claimant's RFC. *See, e.g., Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009). *See also Packham v. Astrue*, 762 F.Supp.2d 1094, 1105, 2011 WL 13531 *10 (N.D. Ill., Jan. 4, 2011) (declining to remand on the basis of *O'Connor-Spinner* where plaintiff "does not contend that the ALJ unfairly characterized her RFC finding when stating the hypothetical"). In this case, however, the hypothetical question was entirely consistent with the ALJ's RFC finding, which, with respect to Plaintiff's mental limitations, stated simply that Plaintiff was limited to performing simple, unskilled work that involved no more than superficial contact with other people (Tr. 40). The ALJ did find, earlier in the decision, that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace, but that finding was made in the context of analyzing, at step three, whether Plaintiff's condition met or equaled a listing (Tr. 39), and the evaluation at step three is separate from the evaluation of RFC. *See* 20 C.F.R. § 404.1520a(d)(3).

This court finds that the ALJ's decision that Plaintiff could perform a significant number of jobs in the national economy, which decision was based on the testimony of the vocational expert, is supported by substantial evidence.

Plaintiff has further argued that the ALJ's step-five finding must be overturned because it violated the requirements of SSR 00-4p, 2000 WL 1898704 (2000)( (Pl.'s Br. at 24-25). That

ruling places an affirmative duty on an ALJ to inquire as to whether a vocational expert's testimony is consistent with the DOT. *See Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006). Plaintiff argues that an ALJ cannot satisfy this duty by asking the vocational expert, before he testifies, to inform him of any conflicts that may arise in future testimony (Pl.'s Br. at 24).

While, as Plaintiff points out, some district courts have agreed with his position (Pl.'s Br. at 24-25), the Seventh Circuit recently ruled definitively on the issue, holding that an ALJ satisfies the SSR 00-4p inquiry requirement by instructing the vocational expert prior to his or her testimony to identify and resolve any conflicts that might arise. *See Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011). Thus, because the ALJ fully complied with the requirements of SSR 00-4p, and because Plaintiff's attorney at the hearing did not allege a discrepancy between the vocational expert's testimony and the DOT, Plaintiff's argument that such a discrepancy existed is unavailing. The Seventh Circuit has held that raising a discrepancy between a vocational expert's testimony and the DOT "only after the hearing, as Donahue's lawyer did, is too late. An ALJ is not obliged to reopen the record." *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002). Unless a conflict is "apparent," an ALJ may rely upon the vocational expert's testimony. *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

Accordingly, the decision of the ALJ will be affirmed.

<u>Conclusion</u>

On the basis of the foregoing the decision of the ALJ is hereby AFFIRMED.

Entered: January 25, 2012.

                                                  <u>s/ William C.  Lee</u>
                                                  William C. Lee, Judge
                                                  United States District Court